BORMAN'S, INC., Plaintiff–Appellee,

v.

**MICHIGAN PROPERTY & CASUALTY GUARANTY ASSOCIATION, Defendant–Appellant.**

No. 89–2056.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 13, 1990.

Decided Feb. 7, 1991.

Rehearing and Rehearing En Banc Denied March 25, 1991.

---

1. We have considered other arguments raised by defendants-appellants and find them to be without merit.

Stephen E. Glazek (argued), Elaine Fieldman, Barris, Sott, Denn & Driker, Detroit, Mich., for plaintiff-appellee.

Kathleen McCree Lewis, Donald S. Young (argued), Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., Jeffrey M. Lipshaw, Dykema, Gossett, Spencer, Goodnow & Trigg, Bloomfield Hills, Mich., for defendant-appellant.

Before: JONES and BOGGS, Circuit Judges; and GIBBONS, District Judge.[*]

NATHANIEL R. JONES, Circuit Judge.

This appeal presents the question of whether the district court erred in finding that Mich. Comp. Laws § 500.7925(3), which excludes from coverage certain insureds whose net worth exceeds a statutorily-calculated maximum under the Michigan Property & Casualty Guaranty Act, is not rationally related to a legitimate governmental purpose in violation of the equal protection clause of the United States Constitution and the Michigan Constitution. 717 F.Supp. 468. As we find that the dis-

trict court exceeded its scope of review in assessing the constitutionality of § 500.7925(3), we reverse.

## I.

Defendant-appellant Michigan Property & Casualty Guaranty Association ("the Association") is a group of insurers created under the Michigan Property & Casualty Guaranty Association Act (the "Act"), Mich. Comp. Laws § 500.7901 *et seq.* Membership in the Association is a prerequisite to transacting insurance business in the state of Michigan for all but a few specifically excluded insurers. Association members pay statutorily set assessments which are placed into a common fund that is used to pay certain "covered claims" of insolvent property-casualty insurers. Section 500.7925 lists the categories of "covered claims", and § 500.7925(3) excludes from the definition of covered claims, "obligations to ... a person who has a net worth greater than $\frac{1}{10}$ of 1% of the aggregate premiums written by member insurers in this state in the preceding calendar year." Although the Act does not define the term "net worth", the parties are in agreement that the general method for calculation of net worth is the difference between a business's total assets and its total liabilities.

On January 9, 1986, the action giving rise to this appeal was brought by Borman's Inc. ("Borman's"). Borman's is a Delaware corporation with its primary place of business in Michigan. Among its business concerns, Borman's owns the Farmer Jack supermarket chain, which consists of some eighty stores in Michigan. In the early 1980's a tort judgment was returned against Borman's for $1.15 million for injuries to a shopper in a Farmer Jack supermarket. $950,000 of that judgment was to be covered by Borman's insurance carrier Ideal Mutual Insurance Company ("Ideal"). However, Ideal was declared insolvent by a New York court and Borman's was required to pay the judgment. Since

[*] Honorable Julia S. Gibbons, United States District Court for the Western District of Tennessee, sitting by designation.

Ideal was a member of the Association, Borman's filed a claim against the Association for the $950,000 it should have received from Ideal. The Association rejected Borman's claim against the Association's insolvency fund because Borman's net worth exceeded the statutory limit under the formula codified in § 500.7925(3).

Borman's brought this action in the U.S. District Court for the Eastern District of Michigan seeking declaratory and injunctive relief and challenging the constitutionality of § 500.7925(3) under the equal protection clause and article 1, section 2 of the Michigan Constitution. The district court denied cross-motions for summary judgment and a seven-day trial was held in January, 1989. The issue presented at trial was extremely narrow. The parties agreed on the method of calculation of net worth and that the purpose of the net worth calculation was to ensure that the Association's limited funds go to those insureds who are least able to absorb an unexpected loss due to the insolvency of an insurer. Thus, the sole issue for trial was whether use of a company's net worth to determine that company's ability to absorb loss was rational. Despite what the district court characterized as "conflicting testimony," J. App. at 135, it determined that net worth was not rationally related to a company's ability to absorb loss and therefore § 500.7925(3)'s exclusion of certain insureds from coverage of the Association's insolvency fund violated the equal protection clause.[1] This timely appeal followed.

## II.

■ The burden upon a party seeking to overturn a legislative enactment for irrationally discriminating between groups under the equal protection clause is an extremely heavy one. When the legislation is economic or social in nature, as in this case, and neither a fundamental right nor a sus-

pect class is involved, the level of scrutiny required is rational basis review.

> Under the rational basis test, which is applicable to economic and social legislation not involving "suspect classes" or impinging upon fundamental rights, "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

*Baker v. Vanderbilt Univ.*, 616 F.Supp. 330, 331 (M.D.Tenn.1985) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)). Thus, the Constitution affords a great deal of deference to state legislatures in creating statutory classifications for legitimate social or economic purposes.

> [T]he fourteenth amendment permits the State a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.

*Id.* at 425–26, 81 S.Ct. at 1105. Further, States are not required to convince the courts of the correctness of their legislative judgments. Rather, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley*, 440 U.S. [93,] 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 [ (1979) ]. . . .

Although parties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational . . ., they cannot prevail so long as "it is evident from all the considerations presented to [the legisla-

---

1. The district court found that analysis of this case under the equal protection clause of the fourteenth amendment and under article 1, section 2 of the Michigan Constitution are essentially identical. *See Manistee Bank and Trust Co. v. McGowan*, 394 Mich. 655, 232 N.W.2d 636

(1975). Therefore, as the district court did, we will confine our analysis to the rational basis test under the United States Constitution, and our conclusions will apply with equal force to Borman's claims under the Michigan Constitution.

ture], and those of which we may take judicial notice, that the question is at least debatable." [*United States v. Carolene Products Co.*, 304 U.S. 144, 153–54, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938)].

*Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 723–24, 66 L.Ed.2d 659 (1981).

■ Against this background, we must decide whether the Michigan legislature's determination that net worth was an appropriate means of predicting the ability of a company to absorb unexpected loss was so irrational that no state of facts "reasonably may be conceived to justify it." We find that within this extremely narrow scope of review, the Michigan legislature's reliance on net worth in § 500.7925(3) passes constitutional muster.

As the district court readily recognized, the testimony presented at trial was conflicting as to whether net worth was an indicator of a company's ability to absorb loss. Dr. George Gottheimer, Jr., an insurance industry expert, testified that the net worth provision was intended to avoid affording "those individuals and corporations with large wealth the same benefits [under the Association's insolvency fund] as unsophisticated individuals with modest means." J. App. at 643. Elijah Poxson, who was a member of the General Counsel's Committee of the Act, explained the inclusion of the net worth provision as follows:

I believed that anyone, any person or corporation which had a net worth of a million dollars, in other words the difference between assets minus liabilities, was a person of substantial wealth and, therefore, would be able to bear a reasonably large unexpected loss without too much difficulty, even if they were uninsured.

*Id.* at 628–29. From this testimony, it would seem that the Michigan legislature might have been relying on net worth as an indicator of wealth, and thus as a stand-in for ability to absorb loss. Julius Otten, an accountant with substantial experience in insurance-related accounting issues, testified that net worth is "commonly perceived

to be the cushion that either an insurance or commercial company can fall back on." *Id.* at 689. Otten characterized net worth as "an imperfect measure in that at times there can be real or perceived inequalities" but emphasized that "it certainly is an indicator of the capacity to absorb loss." *Id.* at 690. We agree with Otten's characterization of the value of net worth in making assessments of ability to absorb loss.

■ Though Borman's put on testimony which suggested that net worth was an unreliable and imperfect measure of ability to absorb loss, the test for constitutional purposes is not whether the legislative scheme is imperfect, but whether it is wholly irrational. *Pennell v. City of San Jose*, 485 U.S. 1, 13–14, 108 S.Ct. 849, 858–59, 99 L.Ed.2d 1 (1988).

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical it may be, and unscientific."

*Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970) (citations omitted). While the Association did not by any means prove that net worth was the best mechanism for determining ability to absorb loss, it did put on sufficient evidence to suggest that factual circumstances were conceivable which could justify the legislature's use of net worth as a proxy for a more complex calculation. Further, the Association put on evidence to suggest that the net worth standard was much easier to administer than more complex standards. While ease-of-administration, on its own, is not sufficient to justify an otherwise irrational legislative enactment, *United States Dep't of Agriculture v. Murry*, 413 U.S. 508, 513, 93 S.Ct. 2832, 2835, 37 L.Ed.2d 767 (1973), it is beyond dispute that the legislature may consider the administrative difficulties of

**164**

individual eligibility determinations in making "a substantive policy determination that limited resources would not be well spent in making individual determinations." *Weinberger v. Salfi*, 422 U.S. 749, 784, 95 S.Ct. 2457, 2476, 45 L.Ed.2d 522 (1975). In enacting § 500.7925(3), the legislature conceivably may have concluded that the ease of administration and the preservation of limited fund resources for legitimate claimants justified the adoption of the rough net worth standard rather than a more precise mechanism of individual determination. Even when the wisdom of judgment of the State legislature is debatable, a federal court is not free to set aside the legislature's judgment to substitute its own. *Kelley v. Metropolitan Bd. of Educ. of Nashville and Davidson Cty. Tenn.*, 836 F.2d 986, 996 (6th Cir.1987), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988).

### III.

While the district court may well have been correct in its determination that net worth is not the best way to determine an insured's ability to absorb loss, the district court erred in determining that Mich. Comp. Laws § 500.7925(3) was not rationally related to a legitimate state purpose under current constitutional standards. Therefore, we REVERSE.