Mark COLEMAN, Carl S. Proctor–Bey, Raymond C. Walen, Jr., C. "Pepper" More, Brent E. Koster, Elton F. Mizell, Individually, Plaintiffs,

v.

Kenneth L. McGINNIS, Director, Michigan Department of Corrections; Alvin L. Whitfield, Deputy Director, Bureau of Administrative Services; David C. Viele, Assistant Deputy Director, Bureau of Administrative Services; John Jabe, Warden and Acting Business Manager, State Prison of Southern Michigan; Dan Purple, Assistant Business Manager, State Prison of Southern Michigan; Edward Benson, Former Business Manager, State Prison of Southern Michigan; Jim Best, Chief Accountant, State Prison of Southern Michigan; Arron Wemple, Shift Commander, State Prison of Southern Michigan; Ric Hartig, Bookkeeping Clerk, State Prison of Southern Michigan; Randy Parsons, Prison Store Supervisor, State Prison of Southern Michigan; Doug Bishop, Prison Store Assistant Manager, State Prison of Southern Michigan; State Prison of Southern Michigan, Individually, and in their Official Capacity, Defendants.

No. 93 CV 70304 DT.

United States District Court, E.D. Michigan, S.D.

Feb. 9, 1994.

Mark A. Coleman, pro se.

Linda M. Olivieri, MI Dept. of Atty. Gen., Corrections Div., Lansing, MI, for defendants.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

Plaintiffs, prisoners at the State Prison of Southern Michigan ("SPSM"), brought this action, pursuant to 42 U.S.C. § 1983, alleging that actions taken by prison officials deprived Plaintiffs of their constitutional rights. This case is now before this Court on Defendant's motion for summary judgement, pursuant to Fed.R.Civ.P. 56(b).

A number of Plaintiffs' claims focus on the Defendant's actions concerning the Prisoner Benefit Fund (the "Fund"). Pursuant to Department of Corrections Rule 791.2235, the Fund was organized to finance and oversee activities that benefit prisoners, such as recreation and self-help programs. 1990 MR 7. The Fund's income is derived from a variety of activities, including a percentage of profits from the Prisoner Store (the "Store") and vending machine concessions. Both prisoners and prison officials are involved in the management of the Fund through positions reserved for them on the Fund's administrative board, known as the Fund Council. At present, there are four seats on the Fund Council, two reserved for prisoner representatives and two reserved for prison officials.

Plaintiffs argue that Defendants violated their Procedural Due Process rights guaranteed by the Fourteenth Amendment by failing to maintain proper accounting procedures. In particular, Plaintiffs allege that the Fund's balance sheet does not reflect the value of fixed assets. Moreover, Plaintiffs claim that Defendants have failed to implement controls to verify accuracy of revenues and costs associated with deposits from the return of soda cans, vending machine sales, photocopying machine usage, and profits from employee clubs, of which the Fund is entitled to a percentage. Plaintiffs allege that money was stolen from the Fund by the Defendants and used to pay for state sponsored services, such as burial expenses, the prison newspaper typesetter, and "out of cell" activities mandated by the consent decree entered into in *Hadix v. Johnson* (80–73581). Plaintiffs also allege that their Procedural Due Process rights were violated by Defendants failure to implement rules of procedures for Fund Council meetings.

In addition to allegations that Defendant's improperly manage the Fund, Plaintiffs also base several claims on Defendants management of the Store. According to Rule 791.-2235(1), the Fund is entitled to a percentage of the profits earned by the Store. On September 30, 1986, Defendants issued a check for $48,000.00 to pay for SPSM's portion of the costs associated with the installation of a new computerized accounting system for prisoners, known as the Resident Accounts Credit Card System ("RACCS"). Plaintiffs argue that the money was taken from the Fund's store account, but Defendants argue that the money was taken from the Store's capital account.

The installation of the RACCS system proved to be more costly than initially expected, and in July, 1991, Defendant McGinnis issued a revised administrative policy directive that ordered the store to deduct from gross profits additional costs associated with RACCS equipment. Although the percentage of profits diverted to the Fund remained constant, the revised policy effectively lowered the Fund's income, because the percentage of profits allocated to the Fund was based on net profits.

Plaintiffs argue that the two purchases of RACCS equipment constituted a violation of their Substantive Due Process rights, and a "taking" of private property without just compensation. Plaintiffs argue that Defendant's actions constituted conversion, and Plaintiffs allege a state law claim of conversion. Plaintiffs also argue that Defendants failed to acknowledge the Fund's authority over the Store constitutes a violation of Plaintiff's Due Process rights.

Plaintiffs also allege that since April 1, 1991, Defendants have misappropriated revenue earned by prisoner's use of telephone services. As a result of negotiating efforts of SPSM officials, telephone companies paid SPSM "premise fees" in exchange for the installation of collect-call only telephones used exclusively by the prisoners. Plaintiffs

claim the Fund should receive these premise fees. In support of their argument, Prisoners cite to an official accounting letter issued in September 1986, by the Michigan Department of Management and Budget ("DMB"), stating that any revenues earned from exclusive prisoner telephone use should be transferred to the Fund's account.

Plaintiffs also bring two Due Process claims that challenge Defendant's policies regarding interest on prisoner accounts. At SPSM, prisoners are prohibited from holding accounts with any financial institution, except for one account operated by prison officials. The individual prisoner accounts established by SPSM officials accrue interest, which is then deposited in the Fund. Plaintiffs argue that the transfer of that interest to the Fund is a violation of the Due Process Clause. Similarly, Plaintiffs argue that the prohibition against prisoners establishing accounts with other financial institutions violates the Due Process Clause.

In addition to a percentage of profits from the Store, the Fund also received a percentage of profits earned on vending machines located throughout the prison. The amount that the Fund received was governed by a contract, executed by the Business manager of SPSM and Canteen Services Co., a vending machine operator. The contract, executed during January 1990, was intended to cover the entire year.

According to Plaintiffs, in May 1990, Defendants informed the Fund council that all revenues from vending machines used principally by prison employees would go to the employee's club, and revenues from all other machines would go to the Fund. This division of income resulted in a loss of revenue to the Fund. Plaintiffs now argue that they have a constitutionally protected property interest in the vending machine contract, and the transfer of the vending machine revenues to the employee clubs constitutes an egregious abuse of governmental power.

In addition to the numerous Due Process claims, Plaintiffs also raise two related Equal Protection claims. Plaintiffs claim that the Fund does not enjoy the same benefits as the employee clubs, specifically the ability to incorporate and engage in transactions with outside companies. This disparate treatment, according to the Plaintiffs, is a violation of the Equal Protection clause.

In addition, Plaintiffs argue that the administrative structure of the Fund violates the Fourteenth Amendment's guarantee of equal protection. As noted above, only two seats are reserved on the Fund Council for prisoner representatives. The prison representatives are drawn from prisoners in the Central and South complexes of SPSM, and prisoners housed in Cell Block Four, Cell Block Five and in Administrative Segregation have no representation. Plaintiffs argue that the decision to deny representation to those prisoners is a violation of the Equal Protection.

I.

■ Summary judgment should be granted by this Court as a matter of law if it is shown that no genuine issue as to material facts exists. *Smith v. Hudson,* 600 F.2d 60, 64 (6th Cir.1979). A *pro se* complaint is subject to a less stringent standard of review. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). However, summary judgment must not be granted if there is "evidence on which the jury could reasonably find for the [non-moving party]." *Pressley,* 754 F.Supp. at 114. When the moving party offers affidavits or other evidence in support of the motion for summary judgement, Plaintiff, as the non-moving party, must demonstrate specific facts showing there is a genuine issue for trial. *See Matshushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ The essential elements of a claim under 42 U.S.C. § 1983 are that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the plaintiffs of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parrat v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). "Absent either element, a § 1983 claim will not lie." *Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir.1991).

## II.

■ At the outset, this Court is aware of the substantial deference that should be accorded prison administrators who are charged with and trained in the running of correctional systems. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Block v. Rutherford*, 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984). Furthermore, as the Supreme Court noted, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the consideration underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

### A. Due Process Claims

#### 1. The Fund

■ Plaintiffs' Due Process claims and their state law conversion claim are based on the premise that they possess a constitutionally protected property interest in the Fund. Plaintiffs correctly assert that a property interest can be created by state laws and statutes. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Plaintiffs argue that Department Rule 791.2235, which established the Fund, provides the necessary independent source of law to create a property interest. In particular, Rule 791.2235 states:

(1) Each institution shall establish a resident benefit fund.... The Director shall establish the percentages of profits to be paid into the resident benefit fund.

(2) Accounting and auditing procedures shall be consistent with the requirements for appropriated funds, and shall be approved by the director's authorized representatives.

R. 791.2235 1990 MR 7.

■ In order for a statute to create a legitimate claim of entitlement, it must limit an official's discretion in denying the benefit to objective and defined criteria. *Olim v. Wakinekona*, 461 U.S. 238, 239, 103 S.Ct. 1741, 1742, 75 L.Ed.2d 813 (1983). Although statutes with mandatory language often create a protected property interest, mandatory language alone does not. *Noldand v. Wheatley*, 835 F.Supp. 476, 486 (N.D.Ind.1993). Rather, the statute must contain objective criteria which will control the decisionmaker's conclusion, and the statute must require a particular result upon a finding that the criteria are met. *Wallice v. Robinson*, 940 F.2d 243 (7th Cir.1991); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989) (quoting *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

In light of these standards, the Court concludes that Rule 791.2235 does not create a property interest in the Fund. *Prisoner Benefit Fund v. Marquette Branch Prison*, 92–26785 (unpublished opinion). Admittedly, Rule 791.2235 does contain mandatory language, but the language refers to the administration of the Fund, and not the putative property interest with the prisoners. The statute offers the director broad discretion in setting Fund policy. More importantly, aside from the requirement that the Fund's accounting procedures be consistent with the requirements of appropriated funds and basic organizational issues, the Rule fails to include "objective criteria" to control the discretion of the director. Thus, based on the uncontroverted facts, Rule 791.2235 does not create a property interest because is not a detailed, comprehensive, rigid set of regulations. *See Kentucky* 490 U.S. at 464, 109 S.Ct. at 1911 (guidelines and permissive standards do not create protected interests).

#### 2. Store Profits

■ This Court must also conclude that the Plaintiffs do not possess any protected property interest in the Store or a percentage of its profits. Rule 791.2235(1) gives the director unfettered discretion to set the amount of money the Fund will receive from the Store. (*See Prisoner Benefit Fund v. Marquette Branch Prison*, LC No. 92–26785, January 7, 1994) (finding that Defendant did not improperly allocate money from the Prisoner Benefit Fund since the money was taken from the store's gross profits before the net profit was transferred to the Prisoner Benefit Fund) (unpublished opinion). The

complete lack of "objective criteria" to control the director's discretion destroys Plaintiff's claim of a protected property interest. Furthermore, the language of the Rule does not support Plaintiff's contention that the Fund has "integral authority" over the Store. *See Jones v. Grunewald,* 644 F.Supp. 256, 259 (S.D.N.Y.1986) (a program organized for the education of prisoners does not create a property interest).

### 3. Premise Fees

■■■ Plaintiffs claim that the decision to use income generated by premise fees to offset the costs of prison administration constitutes a "taking," in violation of Plaintiff's Fifth Amendment rights. As a threshold issue, Plaintiffs must show that they have a constitutionally protected property interest in the income currently received by SPSM from telephone companies. Plaintiffs characterize the accounting letter issued by the DMB as a state regulation that created a constitutionally protected property interest. However, Defendants point out that the DMB later withdrew its proposal. Furthermore, the decision to let the Department of Corrections ("DOC") use telephone premise fees to offset expenses was approved by the legislature in 1990. *See* 1990–1991 Corrections Appropriations Bill (P.A. 210 of 1990). Thus, the legislative decision to award the premise fees to the DOC extinguished any hopes that the income would be transferred to the Fund. Such action is within the right of the legislature. *Sanders v. Borgert,* 711 F.Supp. 889 (E.D.Mich.1989) (States have the right to define an interest that is protected by the Fourteenth Amendment). Thus, any possible property interest created by the original Accounting Letter was properly extinguished by legislative action.

### 4. Interest on Prisoner Accounts and the ban on prisoners engaging in financial transactions with outside institutions.

■■■ Once again, Plaintiffs rely on state regulation as a basis for constitutional protection. Plaintiffs claim that Rule 791.6639 creates a protected property interest in the interest earned on prisoners individual accounts. The Rule is silent on the treatment of interest on prisoner accounts, and afforded prison officials discretion in determining permissible sources of income. Therefore, prisoners' expectations that they would receive interest on their personal accounts are mere speculation and cannot give rise to a protected property interest. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *cf. Tellis v. S. Godinez,* 5 F.3d 1314 (9th Cir.1993) (finding that a Nevada statute created a property interest in interest on prisoner accounts where the statute stated "interest ... earned on the ... fund ... *must be credited to the fund* ") (emphasis added).

■■■ Equally without merit is Plaintiff's claim that the decision to prohibit inmates from conducting transactions with outside financial institutions violates the Due Process clause. Plaintiffs argue that the decision to prohibit prisoners from transacting business with any financial institution is inconsistent with language of Rule 791.6639(1), which states:

> [t]he department shall allow each prisoner to have an institutional account in which he or she may accumulate funds without limit, subject to regulation as to the authorized sources of funds.

791.6639(1) 1993 MR 10. Contrary to Plaintiff's arguments, a straightforward reading of the statute suggests that the term "without limit" refers to the amount of money rather than the sources of income. Furthermore, the statute fails to create a property interest, because it allows prison officials wide discretion in determining permissible financial activities.

### 5. Vending Machine Contract

Similar to prior Due Process allegations, Plaintiffs argue that they possessed a protected property interest in their percentage of vending machine revenues, and the decision to split revenues earned from vending machines constituted a violation of their Due Process rights. However, unlike their other Due Process claims, Plaintiffs argue that the contract between Defendants and Canteen Service created a protected property interest.

■ Admittedly, property interests can be created by valid contracts or mutually explicit understandings. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). However, the only contract at issue here involves an understanding concerning profits from variable soda pop sales. Courts have clearly recognized that not every contract with a state agency creates a property interest. *Unger v. National Residents Matching Program,* 928 F.2d 1392 (3d Cir.1991) (only two types of property rights that arise from contract); *Reich v. Beharry,* 883 F.2d 239 (3d Cir.1989); *Yatvin v. Madison Metro. Sch. Dis.,* 840 F.2d 412 (7th Cir.1988); *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 965–67 (2nd Cir.1988).

■ Further, the court in *San Bernardino Physicians' Servs. Medical Group v. County of San Bernardino,* 825 F.2d 1404, 1408 (9th Cir.1987) noted: "the farther the purely contractual claim is from an interest as central to an individual as employment, the more difficult it is to extend constitutional protection." Certainly the Fund's contractual rights in question, to receive certain profits on vending machines, falls beyond the protection offered to individuals by the Fourteenth Amendment.

B. Equal Protection Claims

■ In order to establish an equal protection violation, Plaintiffs must demonstrate that Defendants treated similarly situated individuals in a disparate manner. *Gillard v. Norris,* 857 F.2d 1095, 1100 (6th Cir.1988). Essentially, Plaintiffs argue that Defendants violated the Equal Protection clause because an organization representing prisoners was not treated similarly to an organization representing prison employees. Prisoners and prison employees are far from similarly situated, as is amply demonstrated by a vast body of prison civil rights law. See, particularly, *Price v. Johnston, supra.* Therefore Plaintiff's first Equal Protection claim is without merit.

■ This Court must review Plaintiff's second Equal Protection claim under a rational basis standard because it fails to implicate a fundamental right or a suspect classification. *Borman's v. Michigan Prop.*
& Cas. Guar. Ass'n., 925 F.2d 160, 162 (6th Cir.1991). To prove an Equal Protection violation, Plaintiffs must allege an invidious discriminatory purpose or intent. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Massachusetts v. Feeny,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). Furthermore, for a statute to be found unconstitutional under the rational basis standard, the classification contained in the statute must be wholly irrelevant to the achievement of the State's objective. *Id.* (quoting *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393 (1961)). The Sixth Circuit has also stated that under the rational basis test, statutory discrimination will not be set aside if any set of facts, reasonably conceived, can justify the discrimination. *Borman's,* 925 F.2d at 163.

■ Under these standards, Plaintiff's second Equal Protection claim must also be denied. Plaintiffs argue that the decision to exclude prisoners in Cell Block Four, Five and Administrative Segregation from representation on the Fund Council violates the Equal Protection clause. However, Plaintiffs have failed to allege any discriminatory motive or intent. In addition, Defendants have an interest in deciding which prisoners may participate in managing the Fund without undue disruption of the facility. Such selectivity is rationally related to the interest of providing maximum benefits to prisoners through the Fund and administrative management of the facility.

Based on the undisputed facts, construed in a light most favorable to Plaintiffs, Defendant's motion for summary judgment must be granted. The statutes and vending machine contract discussed above fail to create a property interest. Moreover, Plaintiffs have failed to state a cause of action based on a violation of the Equal Protection clause.

Accordingly, Defendants motion for summary judgment is GRANTED.