DECISION
Before the court is plaintiff Rhode Island Insurers' Insolvency Fund's (Fund) motion for partial summary judgment under R.C.P. 56 (d) and motion to strike constitutional defenses under R.C.P. 12 (f). Decision is rendered herein.
Facts
The Fund is a non-profit, unincorporated legal entity created by the Rhode Island Insurers Insolvency Fund Act, G.L. 1956 (1994 Reenactment) § 27-34-1 et seq. Under the act, insurers must pay into the Fund as a condition of transacting insurance in Rhode Island. If an insurer is declared insolvent, the Fund becomes obligated to pay the claims of Rhode Island residents covered by the insolvent insurer. Under G.L. § 27-34-11 (2)(a), however, the Fund may seek reimbursement for such payments where the insured party had a net worth of $50 million on December 31 of the year next preceding the insurer's insolvency.
The defendant in this case purchased workers' compensation insurance from American Mutual Life Insurance Company (American Mutual). The policy ran from April 1, 1983 to April 1, 1986. On March 9, 1989, the Supreme Judicial Court of Massachusetts declared American Mutual insolvent. The Fund subsequently paid claims covered by American Mutual policies, including those of Leviton's employees. As of June 30, 1995, the Fund claimed to have paid a total of $1,553,070.35 to claimants under the American Mutual policy issued to Leviton.
Because Leviton had a net worth of $50 million on December 31, 1988 (the year next preceding American Mutual's insolvency), the Fund brought this action seeking reimbursement for moneys paid to Leviton employees under the policy. Leviton answered by challenging the constitutionality of the statute and by asserting several non-constitutional defenses. The Fund filed a motion to strike the constitutional defenses as well as a motion for partial summary judgment seeking a judgment for $1,553,070.35 and a declaration that the recoupment provision does not violate certain constitutional provisions.
Issues
Leviton contends that the statute is unconstitutional because it violates constitutional guarantees of equal protection and due process, it runs afoul of the Contract Clause, and it constitutes an impermissible taking. While the Fund argues that none of these arguments is meritorious, Leviton contends that each challenge presents a question of fact that precludes the entry of summary judgment. The questions presented for the court on this motion are 1) the test of constitutionality under each claim; 2) whether the tests can be applied in the context of a summary judgment action, and, if so, 3) whether the act passes constitutional muster after application of those tests. Each issue is addressed herein.
Summary Judgment Standard
In an ordinary civil case, the party moving for summary judgment bears the burden of proving that no material questions of fact exist and that the movant is entitled to judgment based on pure legal questions. Power v. City of Providence,582 A.2d 895, 903 (R.I. 1990). In cases where the constitutionality of a statute is challenged, the party challenging the statute bears the burden of proving its unconstitutionality. Pawtucket v.Sundlun, 662 A.2d 40, 60 (R.I. 1995). This is true even where the party challenging the statute is the party opposing a summary judgment motion. Power, 582 A.2d at 904. A party challenging the constitutionality of a statute "must convince the court beyond a reasonable doubt that the act is contrary to a provision either expressly stated in the State or the Federal Constitution or necessarily implied from language therein." Inre Advisory Opinion to the Governor (DEPCO), 593 A.2d 943, 946 (R.I. 1991).
Equal Protection
A. Test for Constitutionality[1]
Legislation that does not involve a fundamental right or a suspect classification satisfies the guarantee of equal protection if that legislation is rationally related to a legitimate state interest. Pawtucket, 662 A.2d at 60 (quoting New Orleans v. Dukes, 427 U.S. 297, 303, 95 S.Ct. 2513, 2516-17 (1976)). "Economic and social regulation is considered the classic area where rational basis analysis is applied." Kleczek v. Rhode Island Interscholastic League. Inc.,612 A.2d 734, 737 (R.I. 1992). "The Equal Protection Clause is violated only if the legislative classification rests on grounds wholly irrelevant to the achievement of the State's objective. . . . A statutory discrimination may not be set aside if any state of facts reasonably may be conceived to justify it." Kennedy v. State, 654 A.2d 708, 712 (R.I. 1995) (quoting McGowan v. Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)).
B. Application in Summary Judgment Context
"In regard to the rational basis test, whether the act serves a legitimate objective and whether the act is rationally related to that objective, are questions of law." Power, 582 A.2d at 902.
C. Constitutionality of Statute
In challenging the constitutionality of the statute under the rational basis test, Leviton faces a heavy burden. Recognizing this, Leviton argues that the test is "inherently factual," and thus unresolvable on a summary judgment motion. Unfortunately for the defendants, the Power decision completely forecloses this line of reasoning.[2]
Turning to the merits of the test, the court is persuaded by the reasoning contained in Borman's Inc. v. Michigan Property Casualty Guaranty Assoc., 925 F.2d 160 (6th Cir. 1991) cert.denied 112 S.Ct. 85 (1992). In Borman's, the court addressed the constitutionality of a statute excluding from coverage insureds whose net worth exceeded a statutorily calculated minimum. In upholding the statute, the court found net worth to be an appropriate means of predicting the ability of a company to absorb unexpected loss. Id. at 163.
That rationale applies with equal force here. There is a state of facts that justifies the Legislature's classification in this matter. As the Borman's court concluded, "the legislature conceivably may have concluded that the ease of administration and the preservation of limited fund resources for legitimate claimants justified the adoption of the rough net worth standard rather than a more precise mechanism of individual determination." Id. at 164. Accordingly, the statute does not violate the Equal Protection Clause of either the Rhode Island or United States Constitutions.
Due Process — Retroactivity
A. Test for Constitutionality
The first step in evaluating Leviton's due process claim is to determine whether the statute is retroactive in nature. SeeBrown, 659 A.2d at 102. The test for determining whether a statute operates retroactively is whether the law changes the legal consequences of acts completed before its effective date.Weaver v. Graham, 450 U.S. 24, 41, 101 S.Ct. 960, 971 (1981). A statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends are drawn from a time antecedent to its enactment. Metropolitan Property Casualty Insurance Co. v. Rhode Island Insurer's Insolvency Fund,811 F. Supp. 54, 58 (D. R.I. 1993). Rather, determination of whether a statute's application in a particular circumstance is prospective or retroactive depends upon whether the conduct that allegedly triggers the statute's application occurs before or after the effective date. McAndrews v. Fleet Bank ofMassachusetts. N.A., 989 F.2d 13, 16 (1st Cir. 1993).
If, after applying this analysis, the statute is deemed to operate retroactively, its constitutionality must then be measured.[3] Retroactive aspects of legislation must meet the test of due process. Pension Benefit Guaranty Corp v. R.A. Gray,467 U.S. 717, 730, 104 S.Ct. 2709, 2718 (1984); Brennan v.Kirby, 529 A.2d 633, 639 (R.I. 1987). Laws concerning economic regulation that do not burden fundamental rights pass constitutional muster if they are justified by a rational legislative purpose. R.A. Gray, 467 U.S. at 730, 104 S.Ct. at 2718. Retroactive legislation is deemed to be rationally based and therefore constitutional if, by examining its explicit and implicit purposes and justifications, it can be concluded that the public interest in retroactivity outweighs the unfairness of retroactivity, the latter being measured best by the party's reliance on the preexisting state of the law.Brennan, 529 A.2d at 640 (quoting Hochman, The Supreme Courtand the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 727 (1960)).
B. Application in Summary Judgment Context
The threshold question of whether a statute operates retrospectively is a question of law. See McAndrews v. FleetBank of Massachusetts, N.A., 989 F.2d 13, 16 (1st Cir. 1993) (making threshold determination in context of summary judgment motion). If the statute does operate retroactively, its constitutionality is measured by the rational basis test, which also presents a question of law for the court. See Power, 582 A.2d at 902; see also Brennan, 529 A.2d at 639-40 (applying test on certified question).
C. Constitutionality of Statute
The threshold question regarding the due process claim is whether the statute operates retroactively. Leviton argues that this question presents an issue of fact, thus precluding the entry of summary judgment. The court disagrees.
In McAndrews, the court addressed the plaintiff's claim that a federal statute operated retroactively so as to violate his due process rights. The statute provided that the FDIC, acting as a receiver, could enforce contracts previously entered into by failed banks notwithstanding contractual provisions to the contrary. As a result, the plaintiff lessor was unable to enforce a termination-upon-insolvency clause contained in a lease. Because Congress enacted the statute after the lease was executed, the plaintiff argued that the statute operated retroactively.
The court rejected this argument, noting that a statute is not deemed retroactive "simply because its application requires some reference to antecedent facts." Id. at 16. Rather, "a statute's application is usually deemed prospective when it implicates conduct occurring on or after the effective date."Id. Applying these principles, the court found the statute to be prospective in nature because it was triggered by circumstances (including the tenant's insolvency, the FDIC's appointment as a receiver, and the landlord's attempt to utilize the lease's escape hatch) occurring after the statute's effective date.
The same is true here. Section 27-34-11 (2)(a) was triggered by circumstances occurring after the statute's effective date, including American Mutual's insolvency and the Fund's payment of claims. The court's finding that § 27-34-11 (2)(a) does not operate retroactively eliminates the need to examine the statute's constitutionality. Even if the statute could be characterized as having some retroactive aspect, however, it still meets the minimal test of constitutionality under the Due Process Clause. As addressed earlier, a rational relationship exists between the statute and a legitimate public purpose.
Impairment of Contract
A. Test for Constitutionality
Under Article I, § 10 of the United States Constitution, "[n]o state shall . . . pass any . . . law impairing the Obligation of Contracts."[4] While this clause appears to present an absolute bar to impairment, courts have refused to read the language with literal exactness. Brennan, 529 A.2d at 631.
The threshold inquiry under the Contract Clause is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship. Energy Reserves Group, Inc. v.Kansas Power Light Co., 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship and whether the impairment is substantial." General Motors Corp. v.Romein, 503 U.S. 181, 186, 112 S.Ct. 1105, 1109 (1992).
If substantial impairment exists, the court must determine whether the state has a significant and legitimate public purpose behind the regulation. Energy Reserves Group, 459 U.S. at 411, 103 S.Ct. at 704. If there exists such a purpose, the next inquiry is whether the adjustment of the rights and responsibilities of the contracting parties is based on reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. Id. at 412, 103 S.Ct. at 705.
B. Application in Summary Judgment Context
Determination of whether a statute violates the Contract Clause does not present an issue of fact. See In re AdvisoryOpinion (DEPCO), 593 A.2d at 948-49 (applying test in context of request for advisory opinion); Brennan, 529 A.2d at 638-39 (applying test on certified question).
C. Constitutionality of Statute
The Fund argues that the statute does not impair the contract between Leviton and American Mutual because Leviton retains a cause of action against the receiver of American Mutual. The Fund contends that any impairment of the contract stems from American Mutual's insolvency, not from the operation of the statute. Leviton argues that the recoupment provision not only substantially impairs the contract between the parties but also does so without a legitimate public purpose. On the latter issue, Leviton contends that the Fund has failed to meet its burden of producing evidence to show that the statute has such a purpose.
The court finds that Leviton has failed to hurdle the threshold inquiry on this issue. The statute does not impair the contract between Leviton and American Mutual. Even if substantial impairment did exist, however, it is clear the state has a significant and legitimate public purpose behind the regulation: preservation of the Fund's limited resources. See Energy Reserves, 459 U.S. at 411-12, 103 S.Ct. at 704-05 (remedying broad and general economic problems constitutes legitimate public purpose).
Takings Claim
A. Test for Constitutionality
The Fifth Amendment to the United States Constitution and Article I, § 16 of the Rhode Island Constitution prohibit the taking of private property for public use without payment of just compensation.[5] In identifying a taking forbidden by the Takings Clause, three factors should be considered: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. Connolly v. Pension Benefit GuarantyCorp., 475 U.S. 211, 224-25, 106 S.Ct. 1018, 1026 (1986).
B. Application in Summary Judgment Context
Application of the Connolly test does not present an issue of fact for the court. See In re Advisory Opinion (DEPCO), 593 A.2d at 949 (applying test in context of request for advisory opinion); see also Connolly, 475 U.S. at 220-21, 106 S.Ct. at 1023-24 (applying test in context of summary judgment motion); McAndrews, 989 F.2d at 18 (same).
C. Constitutionality of Statute
The Fund argues that application of the three-part Connolly
test is unnecessary because, as a threshold matter, there has been no taking of private property for public use. The Fund relies on Connolly for the proposition that where the government has not taken property for public use, the Fifth Amendment provides no avenue of relief. Leviton responds by contending that while the issue is factual in nature, even at this stage it is clearly conceivable that the statute constitutes an unconstitutional taking under Connolly.
Examination of § 27-34-11 (2)(a) under the Connolly test reveals that obligations imposed by the statute do not constitute a compensable taking under the Fifth Amendment. As the Fund accurately points out, the "character of the governmental action" in this case is such that "the state cannot be said to have appropriated any of [Leviton's] assets to its own use." Metropolitan, 811 F. Supp. at 59. The fact that the statute serves the public purpose of preserving limited fund resources does not automatically mean that an assessment under its provisions constitutes a taking for public use. Rather, the statute serves to "adjust the benefits and burdens of economic life and promote the common good and. . . does not constitute a taking requiring Government compensation."Connolly, 475 U.S. at 225, 106 S.Ct. at 1026.
Non-Constitutional Defenses
Leviton argues that its defenses of breach of contract, waiver, estoppel, and failure to mitigate preclude the entry of summary judgment in this matter. The court finds that with respect to the amount owed by Leviton, the mitigation defense presents an issue of fact. Despite the Fund's ability to document the amount that it has paid out on covered claims for Leviton employees, a factual issue exists as to the reasonableness of those payments. Presumably this issue will be resolved after Leviton has reviewed the claim files relevant to this matter. Prior to such review, however, summary judgment as to the amount owed by Leviton is premature.
Conclusion
The plaintiff's motion for partial summary judgment is granted as to the defendant's constitutional defenses, but denied as to the non-constitutional defenses. Stated another way, the court finds § 27-34-11 (2)(a) to be constitutional but finds that an issue of fact remains as to the amount that the Fund may recover.
The court also denies the plaintiff's motion for partial summary judgment on count II of the complaint. The court declines to issue an order entitling the plaintiff to all future payments made on covered claims of Leviton employees, because while the court finds that recover of such payments is constitutionally permissible, any non-constitutional defenses that apply with respect to past payments would necessarily apply in the future as well.
With respect to all of the above, counsel shall prepare the appropriate order for entry.
[1] Leviton argues that the § 27-34-11 (2)(a) violates the guarantees of equal protection contained in both the United States and Rhode Island Constitutions. Because the respective guarantees provide the same level of protection, it is unnecessary to engage in a separate inquiry under both constitutions. See Rhode Island Depositors EconomicProtection Corp v. Brown, 659 A.2d 95, 100 (R.I. 1995).
[2] At the hearing on this matter, counsel for Leviton conceded that Power severely undercut her argument. In an attempt to avoid the case's holding, she claimed to have cited Rhode Island cases in her memorandum which ran contrary to Power. Tr. 4/16/96 at 59. After a thorough review of the memorandum as well as independent research, however, the court has been unable to locate this purported authority.
[3] Leviton again argues that the due process guarantees of both the United States and Rhode Island Constitutions have been violated. The state constitutional provision provides no greater protection, however, and therefore only a single analysis is required. See Brown, 659 A.2d at 101-02 (analyzing state and federal due process challenges under United States Constitution only).
[4] The Rhode Island Constitution also contains a prohibition against laws that impair contractual relations. See R.I. Const., art. I, § 12. The Rhode Island Supreme Court has expressly refused to rule that the that state provision places any greater restriction on state legislation, see Brennan, 529 A.2d at 638 n.7, thus negating the need for separate review here.
[5] The Rhode Island provision affords the defendant no greater protection. See In re Advisory Opinion (DEPCO), 593 A.2d at 949 (applying Connolly test to claims under both provisions). As a result, separate analyses are unnecessary.