**37712, INC., Plaintiff–Appellant,**

v.

**OHIO DEPARTMENT OF LIQUOR CONTROL and Michael A. Akrouche, Defendants–Appellees.**

No. 96–3273.

United States Court of Appeals, Sixth Circuit.

May 16, 1997.

Patrick D. Quinn, Quinn, Gonakis & McMahon, Euclid, OH, for plaintiff-appellant.

Chester T. Lyman, Jr., Office of the Attorney General of Ohio, Columbus, OH, for defendant-appellee.

Before: KENNEDY, KRUPANSKY, and NORRIS, Circuit Judges.

## OPINION

KRUPANSKY, Circuit Judge.

Plaintiff-appellant 37712, Inc., an Ohio corporation ("the plaintiff"), has challenged the constitutionality of Ohio statutes which permit "local option" elections in a political subdivision of a county (namely an election precinct or a residence district)[1] whereby the local voters (in this instance the voters in a city election precinct within the City of Eastlake), via initiative and referendum, may forbid certain sales of alcoholic beverages[2] otherwise authorized by licenses issued by

---

1. " 'Residence district' means two or more contiguous election precincts located within the same county and also located within the same municipal corporation or within the unincorporated area of the same township[.]" Ohio Rev. Code § 4301.01(B)(19).

2. The term "alcoholic beverage" is used generically in this decision to subsume every type of state regulated alcohol-containing nonmedicinal beverage, including beer, wine, distilled spirits, and mixed drinks. Cf. Ohio Rev.Code § 4301.01(A)(1). "Beer" includes ale, stout, malt liquor, and all other brewed or fermented malt beverages containing at least .5% alcohol by volume but not more than 6% alcohol by weight. See Ohio Rev.Code § 4301.01(B)(2).

defendant-appellee the Ohio Department of Liquor Control ("ODLC"). The plaintiff contests the district court's denial of its petition for a preliminary injunction, pending resolution of the merits of the case, to restrain ODLC and its Director (defendant-appellee Michael Akrouche) from interfering with the plaintiff's operation of its tavern under its license to sell alcoholic beverages following an adverse local option election; and further attacks the trial court's dismissal of its complaint for failure to state a claim upon which relief can be granted. The plaintiff contends that the operative Ohio local option statutes are facially unconstitutional as violative of due process and equal protection guarantees.

The Ohio legislature has created ten major classifications (incorporating numerous subcategories) of licenses to sell, manufacture, or transport alcoholic beverages, namely types A through I and type W. Ohio Rev.Code §§ 4303.02–4303.231. Generally, retailers which purchase one of the various class C permits may distribute, subject to the terms, conditions, and restrictions appertaining to the particular license subtype, intoxicants including beer, wine, and/or mixed beverages, for off-premises consumption. Ohio Rev. Code §§ 4303.11–4303.121. Service establishments including restaurants, hotels, clubs, and the like which procure one of the sundry class D licenses may retail, subject to the terms, conditions, and restrictions applicable to the particular license subcategory, alcoholic beverages for on-premises consumption or for both on-premises and off-premises consumption. Ohio Rev.Code §§ 4303.13–4303.183. However, Ohio law enables "local option elections" whereby local voters, via referendum, may prohibit certain retail sales of alcoholic beverages within an election precinct or residence district.[3] Ohio Rev.Code §§ 4301.35 & 4305.14. To the extent that a local option election forestalls particular types of sales of alcoholic beverages in the pertinent geographical area, that election effectively nullifies, as applicable to that limited territory, the privilege of conducting retail transactions in the foreclosed alcoholic beverages which erstwhile had been enjoyed by the owner of any ODLC-issued permit which, but for the referendum, would authorize such sales in that region.

The plaintiff owned a tavern in Ward 4, Precinct A, City of Eastlake, Lake County, Ohio, commonly known as the Gold Mine Saloon, and possessed class C and D liquor permits authorizing the retail sale of beer.[4] *See* Order of February 23, 1996, at 2 (J.A. at 16). On May 12, 1995, a valid Petition for Election was presented to the Lake County Board of Elections containing the following propositions:

Shall the sale of beer as defined in Section 4305.08 of the Revised Code under permits which authorize sale for off-premises con-

---

**3.** The Ohio Revised Code specifies the local option questions respecting sales of wine and/or straight or mixed spirits which may be placed on a ballot via initiative:

(A) "Shall the sale of wine and mixed beverages by the package, under permits which authorize sale for off-premise consumption only, be permitted in. . . . ?"

(B) "Shall the sale of wine and mixed beverages, under permits which authorize sale for on-premise consumption only, and under permits which authorize sale for both on-premise and off-premise consumption, be permitted in. . . . ?"

(C) "Shall the sale of spirituous liquors by the glass be permitted in. . . .?"

(D) "Shall state liquor stores for the sale of spirituous liquor by the package, for consumption off the premises where sold, be permitted in. . . .?"

O.R.C. § 4301.35. The Code permits the following issues to appear on a local ballot regarding beer sales:

(B) The following questions regarding the sale of beer by holders of C or D permits may be presented to the qualified electors of an election precinct or residential district:

(1) "Shall the sale of beer as defined in section 4305.08 of the Revised Code under permits which authorize sale for off-premises consumption only be permitted within this (precinct) (district)?"

(2) "Shall the sale of beer as defined in section 4305.08 of the Revised Code under permits which authorize sale for on-premises consumption only, and under permits which authorize sale for both on-premises and off-premises consumption, be permitted in this (precinct) (district)?"

O.R.C. § 4305.14.

**4.** The record is unclear whether the plaintiff was licensed to market any potent potable in addition to beer.

sumption only be permitted in Eastlake City Ward 4 Precinct A?

Shall the sale of beer as defined in Section 4305.08 of the Revised Code under permits which authorize sale for on-premises consumption only, and under permits which authorize sale for both on-premises and off-premises consumption, be permitted in Eastlake City Ward 4 Precinct A?

These measures appeared on the November 7, 1995 ballot, and did not pass, which neutralized plaintiff 37712, Inc.'s legal authorization to sell beer at the Gold Mine Saloon as of January 18, 1996.

On February 2, 1996, plaintiff 37712, Inc. (together with two other parties plaintiff, to wit, Evelyn E. Kinsey, Inc., an Ohio corporation doing business as Paradise Inn; and Smaz, Inc., an Ohio corporation doing business as CCC Tavern),[5] initiated the instant action for temporary and permanent injunctions and a declaration invalidating the subject local option statutes (which authorized the Lake County referenda in controversy) as unconstitutional. On February 6, 1996, the defendants opposed the plaintiffs' petition for preliminary injunctions, and inaugurated a motion to dismiss the complaint. A hearing followed later that day. On February 23, 1996, the district court denied the plaintiff's request for a preliminary injunc-

tion and granted the defense petition for dismissal of the complaint, ruling that the Ohio local option statutes were facially constitutional. Plaintiff 37712, Inc. filed a timely notice of appeal.[6]

Generally, the states possess broad powers under the Twenty-first Amendment to the Constitution of the United States (which repealed national prohibition of the sale of alcoholic beverages), as well as inherent police powers, to regulate, restrict, or ban the sale of alcoholic beverages within their borders. *44 Liquormart, Inc. v. Rhode Island,* —— U.S. ——, ——, 116 S.Ct. 1495, 1514, 134 L.Ed.2d 711 (1996); *California v. LaRue,* 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972). However, this state power may not be abused to violate a person's federal constitutional rights. *See 44 Liquormart,* —— U.S. at ——–——, 116 S.Ct. at 1514–15 (ruling that a state ban on liquor price advertising infringed free speech protected by the First Amendment). In essence, the plaintiff avers that the challenged Ohio local option statutes facially violate the due process and the equal protection clauses of the Fourteenth Amendment[7] and hence the trial court legally erred by dismissing its complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6).[8]

5. Evelyn E. Kinsey, Inc. and Smaz, Inc. owned class C and D licenses and did business in Ward 16, Precinct V of the City of Cleveland, Cuyahoga County, Ohio. A local option election conducted on November 7, 1995 banned the sale of spirituous liquors by the glass, and all sales of wine or mixed beverages under permits which allow sales for either on-premises consumption or for both on-premises and off-premises consumption, in that precinct as of January 18, 1996, thus impairing the ability of Evelyn E. Kinsey, Inc. and Smaz, Inc. to utilize their ODLC permits at their established business locations.

6. Apparently, plaintiffs Evelyn E. Kinsey, Inc. and Smaz, Inc. had also intended to join this appeal. However, they were not properly denominated on the notice of appeal—rather, that filing merely named "37712, Inc., et al." as the appellant(s). J.A. at 36. In this circuit, "the term 'et al.' is insufficient to designate appealing parties in a notice of appeal ... appellants must include in the notice of appeal the name of each and every party taking the appeal." *Minority Employees v. Tenn. Dept. of Employment Security,* 901 F.2d 1327, 1330 (6th Cir.) (*en banc*) (emphasis in original), *cert. denied sub nom. Davis v.*

*Tenn. Dept. of Employment Security,* 498 U.S. 878, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990). Thus, this review has jurisdiction only over the appeal of plaintiff 37712, Inc. *Francis v. Clark Equipment Co.,* 993 F.2d 545, 547 n. 1 (6th Cir.1993).

7. A state statute or local ordinance which by its terms compels unconstitutional results is "facially" unconstitutional and hence is incapable of any valid application. *See Village of Hoffman Est. v. Flipside, Hoffman Est.,* 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362 (1982). No essential issues of material fact are presented for resolution upon a facial challenge to a statute or ordinance. *Brookpark Entertainment, Inc. v. Taft,* 951 F.2d 710, 714 (6th Cir. 1991), *cert. denied,* 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992).

8. Both the district court's dismissal of the complaint for failure to state a claim, and its legal pronouncements regarding the constitutionality of Ohio's local option legislation, are reviewed *de novo. Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 510,

The plaintiff's due process attack encompassed both procedural and substantive dimensions. This review initially addresses the plaintiff's *procedural* due process argument that the Ohio local option statutes facially empower local voters to deprive persons of property without due process because no hearing is afforded prior to the taking of the owner's alleged property interest in the use of its liquor permit in a particular locality. *See Brookpark Entertainment, Inc. v. Taft*, 951 F.2d 710, 716 (6th Cir.1991) ("[A] holder of an Ohio liquor license has a property interest protected under the Due Process Clause. Therefore, the state must accord a liquor licensee due process before revoking the license.") (note omitted), *cert. denied*, 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992).

Contrary to the plaintiff's contention, however, the failure of Ohio law to provide notice and a hearing prior to the alleged "taking" (consequent to an adverse local option election) of a person's privilege pursuant to an ODLC-issued liquor license to market one or more varieties of alcoholic beverages in a particular precinct or residence district does not violate due process, because no notice or opportunity to be heard need proceed any legislative action of general applicability. *United States v. Florida East Coast Railway Co.*, 410 U.S. 224, 244–45, 93 S.Ct. 810, 820–21, 35 L.Ed.2d 223 (1973); *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915); *Nasierowski Bros. Inv. v. Sterling Heights*, 949 F.2d 890, 895–96 (6th Cir.1991); *accord, Pro–Eco v. Bd. of Comm'rs of Jay County*, 57 F.3d 505, 513

(7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 672, 133 L.Ed.2d 522 (1995). A local option referendum of general applicability produces a legislative rather than an adjudicative public policy decision.[9] *Philly's v. Byrne*, 732 F.2d 87, 92–93 (7th Cir.1984). Accordingly, no person actually or potentially adversely impacted by a local option election of a type presently authorized by Ohio law possesses any procedural due process right to notice and a hearing prior to implementation of the referendum's dictates.[10]

Next, the plaintiff maintains that the Ohio local option laws facially conflict with *substantive* due process protections because they empower the local voters to target for closure, in an arbitrary and capricious manner, one or more particular *types* of merchants of imbibable alcohol in a defined area while leaving the businesses of other categories of alcoholic beverage dispensers in the same territory relatively or absolutely unimpaired. Generally, if a referendum result is substantively "arbitrary and capricious, bearing no relation to the police power," that result is judicially voidable as impinging substantive due process guarantees. *Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 676, 96 S.Ct. 2358, 2363, 49 L.Ed.2d 132 (1976); *see Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir.1988) (resolving that substantive due process safeguards prevent "arbitrary and capricious" government action which deprives a person of a property or liberty interest). A municipal ordinance is "arbitrary and capricious," and hence is constitutionally invalid as transgressing due process requirements, "if it fails to advance a

---

136 L.Ed.2d 400 (1996); *Rodgers v. Jabe*, 43 F.3d 1082, 1085 (6th Cir.1995).

**9.** *See Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 679, 96 S.Ct. 2358, 2364–65, 49 L.Ed.2d 132 (1976) (explaining that the referendum process is "a basic instrument of democratic government"); *Southern Alameda Spanish Speaking Organization v. Union City*, 424 F.2d 291, 294 (9th Cir.1970) ("A referendum ... is far more than an expression of ambiguously founded neighborhood preference. It is the city itself legislating through its voters—an exercise by the voters of their traditional right through direct legislation to override the views of their elected representatives as to what serves the public interest.") (*citing Spaulding v. Blair*, 403 F.2d 862,

863 (4th Cir.1968) ("The referendum procedure ... is a fundamental part of the State's legislative process.")).

**10.** Nonetheless, Ohio law permits any person eligible to vote in a local option election, or potentially adversely affected by that election, to protest the validity of a local option initiative petition. Written protests which conform to statutory strictures are heard before the appropriate election officials. Ohio Rev.Code § 4305.14(D). Cf. Ohio Rev.Code §§ 4301.27–4301.28, which afford notice and a hearing prior to the revocation or cancellation by the Ohio Liquor Control Commission, for cause, of a particular license, as well as a subsequent right to appeal an unfavorable decision. *See Brookpark*, 951 F.2d at 714–15.

legitimate governmental interest or if it is an unreasonable means of advancing a legitimate governmental interest." *Curto v. Harper Woods*, 954 F.2d 1237, 1243 (6th Cir. 1992). However, if any conceivable legitimate governmental interest supports the contested ordinance, that measure is not "arbitrary and capricious" and hence cannot offend substantive due process norms. *Id. A fortiori*, if state statutes authorize, via local referenda, only enactments of types which are non-arbitrary, those statutes facially accord with substantive due process values.

In *Brookpark Entertainment, Inc. v. Taft*, 951 F.2d 710 (6th Cir.1991), *cert. denied*, 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992), the Sixth Circuit resolved that a former version of Ohio's local option legislation violated due process strictures because it arbitrarily and capriciously permitted the local electorate to forbid sales of alcohol at *a particular business premise*, thus effectively rendering "dry" a single establishment, while contemporaneously preserving the authorization of all other similar enterprises in the same precinct or residence district to vend alcoholic beverages. However, the current version of Ohio's local option laws avoid this constitutional defect because *all* holders of the *same type* of license to dispense alcoholic beverages in a particular precinct or residence district are exposed to the *same potential disabilities* consequent to a local option election. Stated differently, the local voters cannot preclude any type(s) of licensed alcoholic beverage sales at any specific establishment without banning the same type(s) of transactions under the same types of permits by all other retailers in the subject territory. *See Philly's*, 732 F.2d at 92.

Local voters possess a legitimate interest in regulating the types, modes, and circumstances of alcohol sales in their neighborhood. Legislative distinctions between various types, modes, and circumstances of dispensing alcoholic beverages generally constitute a reasonable means of furthering that public interest. As accurately pronounced by this court via unpublished adoption of a published district court opinion:

> The statutes involved in this case [including Ohio Rev.Code § 4301.35] do not permit voters to target particular establishments. Plaintiffs argue the statutes are arbitrary because they permit voters to "pick and choose" between the types of permit holders they wish to exclude.... However, there are obvious distinctions between different types of licensees. Establishments that sell alcohol for on-premises consumption and those that sell alcohol for off-premises consumption are subject to different, legitimate public interest concerns, as are establishments which sell alcohol and those that simply permit the consumption of alcohol on their premises. Particular businesses cannot be "targeted" under these statutes because voters must completely exclude *all* businesses holding a particular [type of] license. Moreover, voters cannot vote on the issue again for four years. Ohio Rev.Code Ann. § 4301.37. These protections prevent the type of arbitrary action which rendered the statute in *Brookpark* unconstitutional. The Court therefore finds that the Ohio local option election laws at issue here do not violate the Due Process Clause. *See Philly's v. Byrne*, 732 F.2d 87 (7th Cir. 1984).

*Colson v. Shaker Heights*, 880 F.Supp. 1161, 1166 (N.D.Ohio 1995) (emphasis in original), *aff'd*, 103 F.3d 129 (Table), No. 95–3538, 1996 WL 683595 (6th Cir. Nov.22, 1996). Simply stated, distinct categories of alcoholic beverage vendors, and sales of different categories of alcoholic beverages, may reasonably and legitimately be subject to different regulations without facially offending the due process clause.[11]

The plaintiff protests that no rationale can justify the state legislature's grant of statutory immunity to beer manufacturers holding A–1–A permits from exposure to certain local

---

11. The electorate's actual reason for forestalling some types of retail alcohol sales within their community, while permitting other types, is irrelevant, as long as some identifiable legitimate public interest is arguably advanced by the enacted restriction. *See, e.g., Clarke v. Cincinnati*, 40 F.3d 807, 815 (6th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1960, 131 L.Ed.2d 851 (1995); *Arthur v. Toledo*, 782 F.2d 565, 574 (6th Cir.1986).

option election restrictions on their ability to engage in certain retail beer sales, while statutorily rendering vulnerable to local option restraints all other retail beer sales. This contention is misconceived. The Ohio legislature has provided that an owner of a class A–1 permit (which licenses beer manufacture, Ohio Rev.Code § 4303.02) or a class A–2 license (which authorizes wine manufacture, Ohio Rev.Code § 4303.03) may also purchase a type A–1–A permit, which enables certain retail sales of alcoholic beverages on the manufacturing premises.[12] Ohio Rev.Code § 4303.021. Ohio law expressly mandates that a local option referendum impacting retail beer sales shall affect only transactions licensed by a class C or D permit. Ohio Rev.Code § 4305.14(B). *See supra* note 3. Thus, retail beer sales authorized by a type A–1–A license cannot be banned by a local option referendum. Contrary to the plaintiff's posture, however, non-arbitrary material distinctions exist between breweries which sell beer as an incident to their manufacturing operations, and retail operations which merely dispense beer for on-premises or off-premises consumption.

 Manifestly, a legislative judgment that retail beer sales of the type allowed under an A–1–A permit by a brewery or a brew pub do not pose the same risks of fights, automobile accidents, public disorderly conduct, crime, neighborhood decay, alcohol abuse, and other conceivable ills, as might be presented by ordinary taverns or carry out stores, is not irrational. Additionally, the exemption afforded by A–1–A licenses to breweries and brew pubs from exposure to termination, by local option election, of retail beer sales, is supported by a legislative public policy decision to encourage and protect private investment in costly brewery and brew pub equipment and facilities, and to promote domestic in-state production of beer. Beyond contradiction, the holders of A–1–A licenses are not similarly situated

with ordinary retailers of alcoholic beverages, and hence the challenged legislative distinction is not arbitrary and capricious. *See Colson,* 880 F.Supp. at 1166 (explaining that local option election statutes which do not enable the arbitrary targeting of discreet businesses but which instead require equivalent treatment of all similarly situated alcohol merchants in the pertinent locality operating under the same type of license are constitutional).

For this reason, the plaintiff's equal protection challenge is likewise ill founded. The Supreme Court has recognized a tripartite assessment standard under the equal protection clause. Where a statute or ordinance uniquely impacts adversely a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Where legislation uniquely affects a "quasi-suspect" class (*i.e.* gender or illegitimacy), a somewhat less stringent evaluative norm controls (sometimes called "intermediate scrutiny") whereby a legislative classification is deemed legitimate if it is "substantially related to a sufficiently important governmental interest" (gender classifications) or is "substantially related to a legitimate state interest" (illegitimacy classifications). *Id.* at 440–41, 105 S.Ct. at 3254–55.

 However, ordinary enactments which do not especially impair the interests of members of any suspect or quasi-suspect class, and do not inordinately burden the exercise of anyone's fundamental rights (such as those statutes at issue *sub judice* ), are tested under the least demanding equal protection standard, namely the "rational re-

---

**12.** This proviso dictates, in part:

Permit A–1–A may be issued to the holder of an A–1 or A–2 permit to sell beer and any intoxicating liquor at retail, only by the individual drink in glass [sic] or from a container, provided such A–1–A permit premises are situated on the same parcel or tract of land as the related A–1 or A–2 manufacturing permit premises or are separated therefrom only by public streets or highways or by other lands owned by the holder of the A–1 or A–2 permit and used by him in connection with or in promotion of his A–1 or A–2 permit business.

Ohio Rev.Code § 4303.021.

lationship" inquiry, whereby "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." [13] *Id.* at 439–40, 105 S.Ct. at 3254; *see Romer v. Evans,* —— U.S. ——, ——, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996). "When social or economic legislation is at issue," such as the Ohio local option statutes in controversy, "the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3254 (citations omitted). "The burden upon a party seeking to overturn a legislative enactment for irrationally discriminating between groups under the equal protection clause is an extremely heavy one." *Borman's, Inc. v. Michigan Prop. & Cas. Guar. Ass'n,* 925 F.2d 160, 162 (6th Cir.), *cert. denied,* 502 U.S. 823, 112 S.Ct. 85, 116 L.Ed.2d 58 (1991). As in the analogous substantive due process analysis developed above, an enactment subject to "rational relationship" equal protection review must be sustained if any conceivable basis rationally supports it. *Federal Communications Commission v. Beach Communications, Inc.,* 508 U.S. 307, 313–14, 113 S.Ct. 2096, 2100–01, 124 L.Ed.2d 211 (1993); *Arthur v. Toledo,* 782 F.2d 565, 574 (6th Cir.1986).

 As evolved herein, the Ohio local option statutes authorize local voters to eliminate some types of retail transactions in alcoholic beverages while retaining other types, which may adversely impact some type(s) of alcohol retailers while leaving other classes of alcohol vendors less affected or entirely unaffected. Nonetheless, this result does not violate equal protection guarantees for reasons succinctly articulated by the *Colson* court:

> Plaintiffs contend the Ohio local option election laws violate the Equal Protection Clause because they treat "similarly situated persons in the liquor business differently without a rational basis." ... [P]laintiffs claim only "C" and "D" permit holders may be affected by a local option election,

and the voters may "pick and choose" among "C" and "D" permit holders.... Therefore, plaintiffs claim the Ohio law permits voters to discriminate selectively against certain types of liquor establishments, without a rational basis.

> There is nothing invidiously discriminatory about Ohio's local option election scheme, so strict scrutiny is not required here. Rather, the Court must determine whether the statutory scheme is rationally related to a legitimate governmental purpose. Plaintiffs apparently argue that, to comply with the Equal Protection Clause, Ohio's local option election laws must provide for elections which will either permit or exclude all kinds of sales of all kinds of alcohol.... Plaintiffs do not explain, however, how all alcohol sales ... are "similarly situated." In attacking these statutes, plaintiffs bear the burden of showing that the classifications are arbitrary and cannot serve a legitimate governmental goal. *Curto v. City of Harper Woods,* 954 F.2d 1237, 1245 (6th Cir.1992). The mere fact that liquor is involved in all such transactions does not mean that any distinctions among them are arbitrary and do not serve any governmental interest.

> The "all or nothing" approach advocated by plaintiffs is not the only rational one. The distinction between sales of alcohol for on-premises consumption and for off-premises consumption is rationally related to legitimate concerns such as crowd control and unruly behavior which may accompany liquor sales for consumption on the premises.

*Colson,* 880 F.Supp. at 1166–67 (citation omitted) (ruling, *inter alia,* that Ohio Rev. Code § 4301.35 does not affront equal protection standards).

 The federal courts must accord great deference to state legislative classifications created for legitimate social or economic purposes. *Borman's,* 925 F.2d at 162. As developed herein, the Ohio local option statutes, and referenda which may be adopted thereunder, create sensible legislative distinctions which rationally further legitimate

---

**13.** The plaintiff has conceded that the "rational relationship" standard applies to its equal protection assault against the Ohio local option statutes.

public interests; as such, they cannot infringe the Equal Protection Clause.

Accordingly, the judgment of the district court is **AFFIRMED**.