**FILED**
April 24, 2023 05:40 PM
SX-2013-CV-00316
TAMARA CHARLES
CLERK OF THE COURT

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Croix

Jensen Ken Alexander,

      **Petitioner**

v.

Wynnie Testamark, et. al..

      **Respondent.**

Case Number: SX-2013-CV-00316

Action: **Writ of Habeas Corpus**

## NOTICE of ENTRY
## of
## Order

**To:** Amelia B. Joseph, Esq/      Michael Robert Francisco, Esq.

**Please take notice that on April 24, 2023**

a(n)     **Memorandum Opinion**

   **dated**    **April 21, 2023**    **was/were entered**

**by the Clerk in the above-titled matter.**

**Dated: April 24, 2023**

            Tamara Charles
            **Clerk of the Court**

By:

            **Sharisse Bascombe**
            **Court Clerk Supervisor**

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

Jensen Alexander

Petitioner

v.

Winnie Testamark, Director of the
Bureau of Corrections and Joe Booker,
Warden, Golden Grove Correctional
Facility

Respondents

SX-2013-CV-00316

**PETITION FOR HABEAS CORPUS**

### Cite as: VI Super18

**APPEARANCES:**

**AMELIA B. JOSEPH, ESQ.**
Attorney for Petitioner
Territorial Public Defenders Office
#1-B Estate Clifton Hill, 2nd floor
Kingshill, Virgin Islands 00850

**AAG MICHAEL ROBERT FRANCISCO, ESQ.,**
**and AAG IAN CLEMENT, ESQ.**
V.I. Department of Justice
34-38 Kronprindsens Gade
GERS Building, 2nd floor
St. Thomas, VI 00802

*Jomo Meade, Senior Sitting Judge*

### MEMORANDUM OPINION

¶ 1. **THIS MATTER** is before the Court on the Petition of Jensen Alexander (hereinafter "Alexander") seeking relief through a writ of habeas corpus to address alleged statutory and constitutional violations in

relation to the manner in which his imprisonment is being administered. Alexander does not challenge the validity of his confinement. Moreover, it appears to this Court that the relief that the Petitioner is requesting is based on his desire to be incarcerated in a facility in the Virgin Islands. For the reasons that follow, the Petition is dismissed and request for relief is **DENIED.**

**Factual Background**

¶ 2.     Alexander was brought to trial in the Superior Court of the Virgin Islands under an Information which charged him with the crimes of: one count of First-Degree Murder, two counts of First-Degree Aggravated Rape, two Counts of First-Degree Rape, two counts of First-Degree Assault and one count of Carrying and Using a Dangerous Weapon During the Commission of a Crime of Violence. The jury convicted Alexander on all counts of the crimes charged.

¶ 3.     Alexander received a sentence of life imprisonment without parole on the murder conviction, 25 years on the convictions for aggravated rape, and 10 years on each of the convictions for First Degree Assault and Carrying or Using a Dangerous Weapon During the Commission of a crime of Violence.

¶ 4.     In his Petition for a Writ of Habeas Corpus, Alexander does not challenge the validity of his conviction or sentence. However, Alexander raises numerous claims alleging that the officials of the Virgin Islands

Bureau of Corrections ("VIBOC" or "BOC"), violated several statutory and constitutional provisions in the way they administer the terms and conditions of his detention and confinement within the prison system.

¶ 5.   Alexander began serving his sentence at the Golden Grove Correctional Facility in St. Croix[1]. Subsequently, he was transferred to Red Onion State Prison in Virginia and later to Wallen's Ridge State Prison in Virginia. He is currently incarcerated at Wallen's Ridge State Prison. The transfer of Virgin Islands prisoners to be housed in facilities in other states is governed by Title 5 V.I.C. § 4503 (c). A prisoner transfer compact between the Virgin Islands and State of Virginia applies to Alexander's transfer to the State of Virginia.

¶ 6.   The fundamental substance of Alexander's claims is that his transfer from the Virgin Islands constitute a change in the circumstances of his detention which led to several statutory and constitutional violations. Initially, the Court granted the writ to address the following claims:

1. The Director and other officials of the Bureau of Corrections violated the provisions of Title 5 V.I.C. § 4503(c) when they transferred Alexander to Red Onion State Prison and later to Wallen's Ridge State Prison without verifying that these facilities had the educational and vocational programs that were available at the Golden Grove Correctional Facility.

---

[1] In 2022 the name of the Golden Grove Correctional Facility was renamed "The John A. Bell Adult Correctional Facility."

2. The policies and practices of the Red Onion State Prison and Wallen's Ridge State Prison subjected the Alexander to unlawful discrimination because of his Rastafarian religion.

3. The transfer from the Virgin Islands correction facility effectively denied Alexander access to the courts because the facilities to which he was transferred did not have Virgin Islands legal material available.

4. The Director and other officials of the Virgin Islands Bureau of Corrections violated Alexander's constitutional right to due process when they transferred him to Virginia without a hearing, and withheld his property which included documents he prepared in relation to his conviction and sentence.

¶ 7. The Court conducted an evidentiary hearing on March 9, 2022. In support of his claim for relief, Alexander contends that the terms and conditions of his incarnation violates United States Constitution's Fourteenth Amendment Due Process Clause, the First Amendment right to the free exercise of religion and the Eighth Amendment prohibition of cruel and unusual punishment. During the hearing, Alexander raised additional factual allegations which he contends impact adversely on constitutional and statutory provisions which were prescribed to govern his transfer from the Virgin Islands.

## The Legal Standard

¶ 8.    Traditionally, the writ of habeas corpus is a vehicle for challenging the legality of the government's restraint, detention, or custody of a person. It is a device for inquiring into whether the government's restraints on a person's liberty satisfies the ends of justice. "The writ of habeas corpus is meant to prevent injustice or remedy fundamental miscarriages of justice." *Fahie v Gov't of the Virgin Islands*, 73 V.I 443, 450 (V.I. 2020). A person who is unlawfully incarcerated or detained or whose liberty is unlawfully restrained may petition the Court for relief in a habeas corpus proceeding. If the petitioner establishes that the detention is unlawful, the Court shall grant relief by discharging the petitioner from custody or restraint. *Tit. 5 V.I. Code Ann.* § 1312. The petitioner bears the burden of establishing the evidence and proving the facts that would show that the petitioner is entitled to the relief requested. See *Donovan v. Gov't of the Virgin Islands*, 2013 VI LEXIS 21 at *6-7 (Super. Ct. 2013). Relief is granted where appropriate to remedy constitutional or statutory violations. *V.I. Hab. Corp. Rule 2(b)(2).*

¶ 9.    When a person is lawfully imprisoned after conviction for a crime, many of the rights and privileges of the ordinary citizen may become unavailable as is necessitated by the demands of administration of penal institutions. *Price v. Johnston*, 334 U.S. 266, 285 (1948). However, a prison inmate retains many of the rights and protections afforded by the

*Jensen Alexander v. Winni. Festamark, et al*
SX-2013-CV-316
*Memorandum Opinion*

Ci  is: 2023 VI Super 18

constitution. These rights and protections include the Fourteenth Amendment right to due process and equal protection, the First Amendment right to the free exercise of religion, and the Eighth Amendment protection against cruel and unusual punishment. *Walff v. McDonnell*, 418 U.S. 539, 555 (1974).

## DISCUSSION

### A. Claims For Violation of Due Process

¶ 10.    Alexander contends that his transfer to Virginia violated his Fourteenth Amendment right to due process. To support this claim, Alexander alleges: (1) That he was not given a hearing prior to his transfer (2) That The officials of the Virgin Islands Bureau of Corrections deprived him of the property he acquired and kept in his cell (3) That he was denied access to the courts because the property included documents which he needed to prosecute cases (4) That he was denied access to the courts because Wallen's Ridge Prison did not allow him physical access to the library and did not have material on Virgin Islands law. During the evidentiary hearing Petitioner raised the additional claim that he was deprived of his property when the officials at Wallen's Ridge State Prison failed to conduct a proper investigation to retrieve his clothing that were stolen from the laundry.

¶ 11.    "The Fourteenth Amendment's Due Process Clause protects an individual's right against the deprivation of life, liberty or property through

the exercise of governmental authority". *J. McIntyre Mach. Ltd. v Nicastro*, 564 U.S. 873, 879 (2011). "The touchstone of due process is the protection of the individual against the arbitrary actions of the government'. *Wdff*, 418 U.S. at 558. (Citing *Dent v. West Virginia* 129 U.S. 114, 123 (1889)). "The core of due process is the right to notice and a meaningful opportunity to be heard". *Lachance v. Erickson*, 522 U.S. 262, 266 (1998). Accordingly, the analysis of a due process claim encompasses a two-step inquiry. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty". *Am. Mfrs Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). (Citing *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976)). Once it has been determined that the individual has been deprived of a property or liberty interest by the actions of the government, the second inquiry is "whether the procedures followed by the state were constitutionally sufficient'. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (Citing *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

¶ 12.     Furthermore, in addressing a due process claim, the court must not only consider the nature of the right but also the circumstances surrounding the deprivation. "To determine whether due process requirements apply in the first place, we must look not to the weight but to the nature of the interest at stake". *Board of Regents v. Roth*, 408 U.S. 564, 570 (1972). A protected interest means that "a person clearly must

have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. *Id* at 577. At the same time, courts have emphasized that, to offend the Due Process Clause, the actions of government which deprive the individual of those interests must be deliberate, or arbitrary and capricious. *City of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). Arbitrary and capricious applies to governmental action having no legitimate governmental purpose or an unreasonable means of advancing a legitimate governmental interest. *37712 Inc. v. Ohio Dept. of Liquor Control*, 113 F.3d 614, 619 (6th Cir. 1997). "Historically, this guarantee of due process has been applied to the deliberate decisions of government officials to deprive a person of life, liberty or property. *Daniel v. Williams*, 474 U.S. 327, 331 (1986). Neither can the deprivation be merely negligent to satisfy due process requirements. "The defendant must possess a purposeful, a knowing or possibly reckless state of mind, that is because … liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process". *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). "The protections of the Due Process Clause of the Fourteenth Amendment are not triggered by a lack of due care by prison officials. Where a government official's act causing injury to life, liberty or property is merely negligent, no procedure for compensation is constitutionally required". *Daniel* 474 U.S. at 333. Even in circumstances

of intentional deprivation, the requirements of due process do not apply if the state has a post-deprivation remedy for the loss. *Hudson v. Palmer*, 468 U.S 517, 533 (1984) (holding that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a post-deprivation remedy for the loss is available). See also *Parratt v. Taylor*, 4521 U.S. 527, 542 (1981) (finding that the existence of an adequate state remedy negates a due process claim).

### 1. The Transfer to Virginia

¶ 13.      The Director of the Virgin Islands Bureau of Corrections has the authority to enter into agreements to transfer inmates to other correctional facilities in the United States or its Territories based on the needs of the Institution or the welfare of the inmate. *Tit. 5 V.I. Code Ann. § 4503(c).* Alexander contends that his transfer from the Virgin Islands to Virginia violated the requirements of the Due Process Clause of the Fourteenth Amendment because he was not given a hearing prior to his transfer. For the requirements of due process to apply, Alexander must show that he has a right to be incarcerated in the Virgin Islands to serve his sentence. Virgin Islands law confers no right upon a prison inmate to serve his sentence in the Virgin Islands. Therefore, Alexander has failed to show that he has a fundamental or statutorily created right to serve his sentence in

the Virgin Islands or other penal institution of his choice. A prison inmate's hope that he would not be transferred to another prison is not protected by due process. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 3(1979). Accordingly, Alexander has failed to satisfy the first requirement of his due process claim. Since the transfer did not deprive Alexander of a constitutional or statutory right, the Due Process clause was not implicated so there was no need for notice and hearing prior to his transfer.

## 2. The Deprivation of Property

¶ 14.     Alexander next claims that upon his transfer, the officials of the Virgin Islands deprived him of his property by withholding or failing to deliver to him the property he had acquired and kept in his cell. The Court must decide whether the taking was willful, negligent, intentional or unauthorized act of a government employee or whether it was in conformity with governmental authority. Alexander does not state whether the property was taken under a policy of the BOC or other governmental authority. Neither does he state whether the deprivation was an act of negligence or the unauthorized intentional act of a government employee. In the absence of any evidence of the circumstances surrounding the deprivation, this Court cannot determine whether the deprivation constitutes a violation of due process. In any event, the Virgin Islands Tort Claims Act, *Title 33 V.I.C. §§ 3401 et seq.*, provides an adequate post-

deprivation remedy for the negligent or intentional acts of government officials which result in injury to property interests. Intentional or negligent deprivations of property by government employees do not constitute a violation of due process unless the state refuses to provide a post deprivation remedy. *Hudson,* 468 U.S. at 533. A tort claims procedure is an adequate post deprivation remedy to address the deprivation of property rights by state employees. *Zinermon v. Burch,* 494 U.S. 113, 128 (1990).

¶ 15. Alexander also claims that the officials of Wallen's Ridge State Prison failed to investigate the theft of his clothes that were taken from the laundry in that facility. Here, Alexander does not allege that he was deprived of his property by governmental authority or the actions of a state employee. A due process claim would first require Alexander to show that the deprivation was caused by the actions of the state or state employee.

### 3. The Denial of Access to the Court

¶ 16.    To support his claim of denial of access to the courts, Alexander alleges:(1) that the property he lost when he was transferred from the Virgin Islands included documents which he needed to prosecute claims relating to his conviction and sentence; (2) Prison officials denied his request for his birth certificate and social security card which he needed to file a document with the Court; (3) That he was denied physical access to the library at Wallen's Ridge and that the Wallen's Ridge library is

lacking in Virgin Islands legal material.

¶ 17.     "Prisoners have a constitutional right of access to the courts". *Bounds v. Smith*, 430 U.S. 817, 821 (1977). And, while the right of access to the courts encompasses the right of access to a library and legal material, it does not guarantee physical access to the library. "The fundamental right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law". *Id.* at 828.

¶ 18.     Alexander made a general claim about the loss of legal documents but did not specify the documents he lost or how they related to the actions he intended to file with the Court. Alexander's failure to describe his documents with some measure of specificity made it impossible for the Court to determine the merits of his claim. Likewise, Alexander failed to explain to the Court how the denial of his request for his birth certificate and social security card prohibited him from filing documents with the Court or otherwise denied his access to the Court.

¶ 19.     Furthermore, neither Alexander's claim of being denied physical access to the library nor his claim of the unavailability of Virgin Islands legal material is factually sufficient to support a claim of due process violation. In clarifying the standards set by *Bounds v. Smith*, the U.S, Supreme Court held that an inmate who claims a violation of the right of

access to the courts must show "actual injury'. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). An inmate can show actual injury by showing that the denial of access caused the loss or rejection of a legal claim. *Oliver v. Fauver*, 118 F.3d 175, 177 (3ᵈ Cir.1997). Alexander's claim that he is not allowed physical access to the library does not amount to the type of injury for which the constitution provides redress. "The constitution does not require that prisoners (literate or illiterate) be able to conduct generalized research, but only that they be able to present their grievances to the court'. *Lewis*, 518 U.S. at 360. Alexander's notion that he has a right of physical access to the library is misguided. The U.S. Supreme Court has further clarified that, "because *Bounds* did not create an abstract, freestanding right of access to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense". *Id* at 351. Alexander has not presented any evidence of actual injury. In fact, since his incarceration, Alexander has filed several actions with the Superior Court of the Virgin Islands, seeking various forms of relief. Alexander has himself testified during the evidentiary hearing that he has filed five or six actions, some of which are still pending in the Superior Court. In addition, Alexander was unable to explain or provide to the Court any information regarding Virgin Islands legal material that he needed but was not available. (See Transcript, p. 35-36)

¶ 20.    On the other hand, Mr. Steven Isabell, the law librarian at Wallen's Ridge, testified that the library is updated with LexisNexis data bases of Virgin Islands law every couple of months. He also testified that the format for obtaining legal material is for inmates to submit a request to the librarian. If the inmates need additional assistance, they are referred to the institutional attorney who arranges to meet with them.

¶ 21.    Alexander has failed to show actual injury from his denial of access to the library and has failed to show that the measures provided to gain legal material does not meet constitutional standards.

**B. Claims of Violation of Free Exercise Clause**

¶ 22.    Petitioner alleges that the Red Onion State, and Wallen's State prisons discriminated against him on the basis of his Rastafarian religion by their grooming policy and their failure to provide adequate legal services for Rastafarians. Alexander testified that because he is a Rastafarian who grows long hair he was not allowed to go into the general population. Ms. Marsha Hensley, the Institutional Program Director at Wallen's Ridge, testified that the grooming policy placed inmates who chose to grow long hair into their own pod. (Transcript p. 117). She further testified that these inmates were permitted to engage in the same activities as the rest of the general population. In any event, both Ms. Hensley and Alexander testified that the hair grooming policy is no longer in operation. Accordingly, this claim is moot.

¶ 23.     In his second claim of religious discrimination Alexander testified that although prison officials allow Rastafarians to assemble and conduct their religious practices, prison officials do not provide clergy or written material on the Rastafarian religion. Alexander does not contend that there is a regulation or policy prohibiting the presence of clergy or Rastafarian religious literature at Rastafarian religious gatherings. Therefore, this does not appear to be a claim that challenges the prohibition of Rastafarian religious practices by prison administration. This appears to be a claim for religious accommodation. It is unreasonable to expect that prison officials will automatically know what materials or clergy every prisoner will need to conduct religious practices. Therefore, the religious practitioner will have to inform prison officials and request accommodation for the various needs of his religious practice. Ms. Marsha Hensley's testimony indicated that the institutional chaplain, Mr. Reagan, is available to all inmates to gather information from them about their religious needs. Mr. Reagan also has the responsibility to respond to inmates' request for religious accommodation and wherever possible to provide them the accommodation requested. It is unclear to this Court whether Alexander has ever requested this accommodation. There is no evidence which establishes that Alexander ever requested clergy or religious material and the request was denied. Even when the Court inquired, Alexander was unable to inform the Court of which sect of the Rastafarian religion he

practiced or for which he was requesting clergy or religious material.

¶ 24.      Incarcerated individuals are afforded their constitutional rights under a more restricted framework than the ordinary citizen. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987). However, prisoners do not forfeit all constitutional rights when they are convicted and confined to prison. *Cruz v. Beto,* 405 U.S. 319 (1972). *(per curiam).* In Cruz, the District Court dismissed Petitioners claim for religious accommodation and denied relief without a hearing. The Petitioner, Fred Cruz, in an action filed in the U.S. District Court, Southern District, Texas, alleged that he was subjected to penalties because he was a Buddhist and requested material to accommodate his religious practices. The District Court denied relief stating that religious accommodation was within the discretion of prison officials. The U.S. Court of Appeals, 5th Circuit, affirmed. The U.S. Supreme Court reversed, stating that Cruz, by alleging that he was denied religious accommodation and a reasonable opportunity to pursue his faith, stated a palpable claim under the First Amendment. Nevertheless, a prisoner bears the burden of showing that his requested religious accommodation is genuine, and that the prison's denial of the request imposes a substantial burden on the exercise of his religion. *Ramirez v. Collier,* 142 S. Ct. 1264, 1277 (2022).

¶ 25.      When the policies or practices of a prison violates constitutional guarantees, it is the duty of the courts to protect the constitutional rights

affected. *Turner v. Safley*, 482 U.S. 78, 84 (1987). In fulfilling this duty, the court must determine whether the actions of the prison unlawfully burdens the free exercise of religion. It logically follows that in this case, Alexander must show that he requested the accommodation, and it was denied or that the prison has implemented a policy or regulation that prohibits the accommodation. Alexander has not shown either. Therefore, the Court cannot determine whether there was an impermissible encroachment on his constitutional right to the free exercise of religion.

### C. Claims of Cruel and Unusual Punishment

¶ 26.     The Eighth Amendment to the U.S. Constitution prohibits the infliction of cruel and unusual punishment. *U.S. Const. Amend VIII.* Although persons convicted of crimes may be deprived of certain rights fundamental to liberty, the Constitution recognizes the rights which prisoners retain in the essence of their human dignity. "Society is entitled to impose severe sanctions on an offender to express its condemnation of the crime and to seek restoration of the moral balance caused by the offense". *Graham v. Florida*, 560 U.S. 48, 71 (2010). "After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment". *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). But "under the Eighth Amendment, the State must respect the human attributes even of those who have committed serious crimes". *Graham*, at 59.

¶ 27.     To support his claim of violation of the Eighth Amendment, Alexander alleges (1) that he was put in segregation for 16 months when he first arrived at Red Onion State Prison, (2) that he is forced to drink water from a faucet that is connected to the same plumbing system as the toilet, (3) that he was denied adequate medical services at Wallen's Ridge.

### 1. Segregation

¶ 28.     The mere fact that a person is placed in segregation does not constitute a violation of the Eighth Amendment prohibition against cruel and unusual punishment. Segregation may be necessary to serve institutional security, correctional purposes or the safety and welfare of the inmate. *Meachum v Fano*, 427 U.S. 215, 225 (1976). In order to satisfy an Eighth Amendment claim, conditions of confinement must be such as to deny the inmate "the minimal civilized measure of life's necessities". *Wilson*, 502 U.S. at 298. A prisoner's confinement in an administrative segregation for 15 months did not implicate a liberty interest. *Millhouse v. Arbasak*, 373 F. App'x 135, 138 (3rd Cir. 2010). The Court in *Millhouse* also found that placement in segregation "does not constitute an atypical hardship" that rises to the level of a constitutional violation. Alexander has not alleged any facts which show that his placement in segregation was attended by the deprivation of the "minimal measure of life's necessities" or that he was subject to circumstances that can be characterized as the "wanton and unnecessary infliction of pain'. *Rhodes v. Chapman*, 452 U.S.

337, 345 (1981). Moreover, Alexander testified that his segregation was imposed at Red Onion State Prison when he was first transferred from the Virgin Islands. Habeas Corpus applies to existing conditions of unlawful confinement for which the Court can provide relief. *Hab. Corp. Rule (2) (a)(1)*. By his own testimony, Alexander is no longer subject to those conditions. Therefore, the claim is moot and habeas corpus relief is inapplicable.

### 2. Unsanitary Cell Conditions

¶ 29.     Alexander's allegations indicate that his cell is equipped with a faucet and toilet which are served by the same source of water. He contends that the fact that the toilet and faucet are fed by the same water source, creates an unsanitary condition in his cell. He further contends that his being forced to drink water from the faucet constitutes cruel and unusual punishment. Alexander does not contend that he has suffered any ill health of other physical harm as a result of drinking the water. He merely insists that, unlike what he would have been able to do in the Virgin Islands, he is not at liberty to purchase bottled water as an alternative.

¶ 30.     From all appearances, Alexander is simply contending that life in Wallen's Ridge is more aggravating and burdensome for him than it would be if he were in the Virgin Islands. In effect, Alexander is urging this Court to find that he is being unfairly punished in violation of his constitutional protections because he is not able to live as comfortably as he would be in

the Virgin Islands. Alexander's discomfort with confinement is understandable. However, "the Constitution does not mandate comfortable prisons". *Wilson* at 298. (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined". *Meachum* at 224. The fact that Alexander's confinement causes him discomfort and interferes with his understandable desire to live as comfortably as possible with as little restraint as possible during confinement does not mean that the conditions of his confinement constitute punishment. *Bell*, 441 U.S. at 537.

### 3. Denial of Medical Services

¶ 31.    "The Eighth Amendment is not to be regarded as a static concept but is to draw its meaning from the evolving standards of decency that marked the progress of a maturing society'. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Today, the Eighth Amendment prohibits punishment which, although not physically barbarous, involve the 'unnecessary and wanton' infliction of pain". *Rhodes* 452 U.S. at 345 (citing *Gregg v. Georgia*, *supra*). The denial of adequate medical services to a prisoner may implicate the Eighth Amendment. However, "this does not mean that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment'. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "In order to state a cognizable claim, a prisoner must allege acts or

omissions sufficiently harmful to evidence deliberate indifference to serious medical needs". *Id.* Whether the attendance to the prisoner's medical needs is characterized as inhumane conditions of confinement or failure to address medical needs, the "deliberate indifference standard" is appropriate. *Wilson*, 501 U.S. at 303.

¶32. Alexander testified that he contracted a fungal infection to his toe and was provided treatment that did not cure the infection. He further testified that the treatment he was provided is a pharmaceutical product called Lamisil. He started taking the Lamisil but stopped because one of the side effects is that it damages the liver. He also contends that there is a product that he knows of which would avail him of a cure that he would be able to obtain had he been in the Virgin Islands. He claims that he is unable to obtain the product at Wallen's Ridge because prison officials do not allow him to contact "outside vendors". Except for his own testimony, Alexander did not provide any evidence that the product he suggested actually cured a toenail fungal infection.

¶ 33. Dr. Benny Mullins, the institutional physician, was called to testify on behalf of the Respondents. During his testimony Dr. Mullins stated that fungal infections of the toe are frequent occurrences in prison. He also testified that the Federal Bureau of Prisons and the Virginia Department of Corrections do not recommend treating fungal infections because they are very difficult to treat and sometimes the treatment is worse than the

infection itself (Transcript p.88). Dr. Mullins also stated that Alexander was sent to a surgeon and a dermatologist for treatment in relation to his fungal infection. Alexander was tested for liver damage before and three weeks after using Lamisil and the tests did not show any symptoms of liver damage. However, Alexander stopped using the medication after three weeks. Thereafter, Alexander and was offered alternative treatments including a topical antibiotic and vinegar foot bath as recommended by the dermatologist. In each case, Alexander used the treatment only partially. From Dr. Mullins' testimony which Alexander does not deny or refute, it appears that prison officials undertook measures to ensure that Alexander received treatment for his fungal infection. There is no evidence that prison officials responded to his medical needs with the deliberate indifference that supports a claim of an Eighth Amendment violation.

**D. Claims of Statutory Violations**

¶ 34.     A person's liberty is protected, even when the liberty itself is a statutory creation of the state. *Meachum*, 427 U.S. at 226.   Alexander asserts that the Respondents violated the provisions of the Virgin Islands Code which authorizes his transfer to Virginia when they failed to ensure that the prison to which he was being transferred has adequate educational or vocational programs. Title 5 V.I.C. § 4503(c) states as follows:

> The Director of Corrections is authorized to enter into agreements to use the correctional or detention facilities

> of the United States Bureau of Prisons; or the correctional facilities of any state or local government or private correctional entity located in the United States, its territories, possessions, commonwealths or the District of Columbia, which are accredited by the American Correctional Association, when the Director of Corrections determines that detention and/or correctional facilities within the Virgin Islands are inadequate to serve the best interest of the inmate or the general interest or welfare of the Territory; provided that as a condition of and prior to the transfer of any inmates, the Director of Corrections shall ascertain and insure the availability of educational and/or vocational programs at the institution they are to be transferred to for the purpose of enabling such inmates to gain marketable skills, and provided further that no inmate is to be transferred to any institution lacking any such program(s). <u>5 V.I.C. § 4503.</u>

¶ 35.     The applicable provision of §4503 (c) appears to give Alexander the right not to be transferred to a prison in which there are no educational or vocational programs. Alexander claims that the only vocational program at Wallen's Ridge is a custodial maintenance program which only teaches skills on how to become a janitor. He states that as compared to the Virgin Islands where there are more programs which offer a wider range of job skills, this is inadequate. Even if it is true that the Virgin Islands offers a wider range of educational or vocational programs, that fact is not dispositive of whether prison officials violated the terms of the statute. The statute prohibits the transfer of an inmate to an institution that is *"lacking in any such program*(s)" [emphasis added]. The statute does not require prison officials to determine that the programs at the receiving institution are identical or substantially comparable to the programs in the Virgin

Islands.

¶ 36.    The establishment of educational and vocational programs is within the authority and discretion of prison officials. Ms. Marsha Hensley, the Institutional Program Director for Wallen's Ridge, testified that the Custodial Maintenance Program is the only job skills program at Wallen's Ridge. However, she also testified that there are various other programs which have been implemented to meet the rehabilitative goals of the Institution. She listed among others, the Thinking for a Change Program, the Decision Point Program and the Building Opportunities of Knowledge Program. She further stated that the prison administration would periodically have "outside resources' come in to meet and speak with the inmates about setting up and operating a business [Transcript p. 132].

¶ 37.    Although it is clear that there are educational programs at Wallen's Ridge, Alexander is urging this Court to find that prison officials violated § 4503(c) because the programs at Wallen's Ridge are not to his satisfaction or In his estimation, compare poorly with the programs in the Virgin Islands. This would require this Court to determine which educational or vocational programs are more appropriate for prisons. The U.S. Supreme Court has emphasized that courts must defer to the policy judgments of prison officials in matters of prison administration. *See, Bell v Wolfish,* 441 U.S. 520, 531 (1979); *Procunier v Martinez,* 416 U.S. 396, 405 (1974) (finding that courts are ill equipped to deal with the

increasingly urgent problems of prison administration). Alexander has not shown that Wallen's Ridge is lacking in educational or vocational programs that would enable inmates to develop marketable skills. For instance, the programs identified by Ms. Marsha Hensley may well provide inmates with marketable skills to accommodate their return to society or maintain themselves within the prison system. This Court is not at liberty to say that the prison's, "Thinking for Change Program" or "Opportunities of Knowledge Program" do not meet the category of vocational or educational programs that would enable the inmate to acquire or develop marketable skills. They may not be identical to the Virgin Islands programs but that does not mean that the institution is lacking in appropriate programs for the development of marketable skills.

¶ 38. Alexander also asserts that prison officials subjected him to unequal treatment in violation of Virginia Code§ 53.1-216 when they placed him in segregation upon his initial arrival at Red Onion State Prison. This provision states as follows:

> All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any

legal rights which said inmate would have had if confined in an appropriate institution of the sending state. *Va. Code Ann.* § 53.1-216.

¶ 39.     Alexander did not allege any facts regarding the conditions of his placement in segregation except that he was not allowed into the general population and permitted to do the things that were allowed in the general population. He has not alleged that he was segregated for any reason that was related or unrelated to punishment. He has not alleged that he was deprived of a protected right for an unlawful reason. Administrative segregation is permissible at the discretion of prison officials. A prisoner's rights may be diminished by the needs and exigencies of the institutional environment. *Wolff*, at 555. But, as has been previously noted, this is not a claim that is eligible for habeas corpus relief since the circumstance of his segregation no longer exist.

### E. Claims of Non-Statutory Violations

¶ 40.     Alexander makes various claims which do not identify any deprivation of a statutory or constitutional right nor allege facts which would support a violation. He claims that the light in his cell is on 24 hours per day. This may be a security measure employed by the prison officials. He claims that the food is unsatisfactory because he cannot get the fruits and vegetables he desires and would be available to him in the Virgin Islands. However, he has not alleged any facts to indicate a danger to his

health or welfare. The fact that life at one prison facility may be more burdensome or disagreeable than another does not indicate a violation of statutory or constitutional rights. *Meachum* at. 225. He claims that prison officials violated the terms of the transfer compact when they failed to pack his belongings and ship them to him. This claim is based on contractual, rather than statutory or constitutional rights. Alexander may be a third-party beneficiary of the agreement between the Virgin Islands and Virginia but the violation of the terms of this agreement does not amount to the violation of any statutory or constitutional provision which confer rights to which Alexander may be entitled. Alexander does not support any of these claims with facts indicating that he has been deprived of a statutory or constitutional right or subjected to unnecessarily oppressive circumstances. For instance, Alexander does not allege that food preparation and service are of such poor nutritional or hygienic sufficiency that it poses an unreasonable threat to his health. Neither has Alexander alleged that he requested a particular diet because of his health or religion and that request was denied. Finally, Alexander claims that he was forced to pay for medical services but also testified that he no longer has to pay because that the policy has been abolished. This claim is therefore moot and is ineligible for habeas corpus relief. Overall, these claims do not meet the threshold of constitutional or statutory violations which would entitle Alexander to habeas corpus relief.

## Conclusion

¶41.    Jensen Alexander has petitioned this Court for relief in a habeas corpus action alleging that prison officials violated various constitutional and statutory provisions in the way they administer his confinement. Alexander has failed to provide the evidence that satisfies the standards which support his claim for relief. Therefore, the claim for relief is **DENIED**.

DATE: *April 21, 2023*

**HONORABLE JOMO MEADE**
Judge of the Superior Court

A T T E S T

**TAMARA CHARLES**
Clerk of the Court

By: *Sharisse A. Bascombe*
Court Clerk Supervisor

CERTIFIED TO BE A TRUE COPY
This ____ day of ____ 20 ____
TAMARA CHARLES
CLERK OF THE COURT
By _____ Court Clerk